Good morning. May it please the Court, Wesley Fujimoto representing respondent appellants in this matter. May I reserve five minutes from the argument to respond? Yes, sir. Keep track and we'll try to help. Okay. Thank you, Your Honor. Briefly, Your Honor, what I'd like to do is to comment and respond on the supplemental briefing that the Court requested from the parties with respect to the jurisdiction issue with respect to district court. Our position is, Your Honor, that the power that to approve 10J injunctions rests with the Board and the Board only. The delegation, as I believe the Board has argued in the supplemental brief, the temporary delegation in 2007, our contention is that that delegation was improper and contrary to the statute. The General Counsel or the Board in the supplemental brief went beyond even what I believe they had argued previously in that they now say that the Board has the option, three options. It can itself approve the 10J or it can delegate to the General Counsel or it can delegate to the Regional Director. And now we're broadening the statutory read to include another level even beyond the General Counsel. The Board's assertion of that type of broad inherent power has nothing within the statute to support that. Our contention is that while there is some delegation authority within the statute for the Regional Director, that delegation is restricted only to the Board. I'm confused. I thought you were going to start by arguing about whether this is jurisdictional or not jurisdictional, whatever it is, but that's not what you're doing here. Well, Your Honor, what I'm arguing is that with respect to the jurisdiction of the Court, as the section 10J, as we argued in the brief, in the supplemental brief, the 10J requires that the Board approve the filing of the petition for 10J after a filing of the 10J. That's your position. I understand that. But you're kind of leaping that now into arguing about whether if that were true. Without getting into that issue at this point, you're trying to tell us whether that would be a jurisdictional problem if it were true. Your Honor, what I'm trying to respond to is the broad reading that the Board has now indicated in the supplemental brief with respect to these various options. And our contention is that the delegation itself was improper, as we've argued in the brief, with respect to the language of the statute restricting it to the power of the Board to authorize it. And I believe that the Court has identified one issue, the 1955 memo, and requested that the parties respond to that memo and what impact that will have. Yes, Your Honor? No, I'm just trying to understand the flow, Your Honor. Go ahead. Okay. Well, it reflects to the jurisdiction, Your Honor, because our general contention, as we've argued in the brief, is that the District Court had no jurisdiction. Let's leave the Regional Director out of this for the moment, okay? I mean, I gather the understanding is that whatever the General Counsel can do, the Regional Director works for the General Counsel, and the General Counsel can direct the Regional Director to do things. But leaving that aside for the moment, if there's a mistake in this regard, what makes it jurisdictional? In other words, ordinarily, the form of the paper when it comes to the District Court is Joseph Norelli, Regional Director versus HTH, and there's no representation made directly, and there never has been, as I understand it, as to whether the 10J petition was approved by the Board or not. It looks procedurally regular on its face. Why is this the District Court's problem in terms of the District Court's jurisdiction? Well, Your Honor, it's the approval of the filing of the petition by the Board. Our contention is that the temporary delegation in 2007 by the Board, directly giving the General Counsel authority to file it, that in and of itself then negates the validity of the petition because the Board could not delegate that power to approve the 10J petition to file. But ordinarily, if somebody comes into court and says, you know, you're here, right, and you're telling me that you're representing your client, right, and I have no idea whether your client made a decision to hire you and to authorize you to do this case in a procedurally regular way. Maybe they did. Maybe they did. I have no idea. Suppose it turns out they didn't. Does that mean I don't have jurisdiction? Well, Your Honor, it's with respect to the properly filed petition before the Court under 10J. And upon the filing of a properly approved petition, the Court then has jurisdiction to issue the remedy. Our contention is that the petition itself was not properly filed. Generally, courts have jurisdiction to issue remedies. If people come into court to issue injunctions, somebody comes into court and asks for an injunction, and there's a statute that says you can get an injunction. So let's take you. I mean, here you are. All right. What if somebody came in and said, you know what, in fact the Board of Directors did not approve hiring this counsel and he has no business being here? Is that my problem? It may be my problem. Is it my jurisdictional problem? At least in the sense of the statutory provision with respect to the filing of the petition under 10J. The statute provides for a properly filed petition at that point. And upon the filing, the jurisdiction of the Court then arises. Well, don't you think the answer is more directly if the statute says something like this, the Court shall have jurisdiction if the Board authorizes a petition to be filed. Then it would be jurisdictional, wouldn't it? If the statute is. Something like that. Like that, right? If the statute is. If the authorizing statute itself says the Court's jurisdiction depends upon, you know, a proper petition, then it seems to me an argument can be made that it's jurisdictional. And, in fact, 10J uses a phrase, you know, the Board shall have power and so on and so on. And then it says, and thereupon the Court shall have jurisdiction. So it seems to be, I mean, it could be read as a jurisdictional statute, doesn't it? Yes, Your Honor. I'm reading it. Isn't that your argument? Our argument is that it is a jurisdictional statute upon the filing of a properly filed petition. And without the properly filed petition, at least under statute, the first part of the statute is not met with respect to having it before the Court in a proper approved procedure. Now, assuming for the moment that it actually makes a difference, whether jurisdictionally or otherwise, just why doesn't the Board or didn't the Board have the authority to delegate to the General Counsel the decision here? Your Honor, that goes into the interpretation of Section 3D, 3B, and in the own internal memos of the Board itself. And we argue that within the supplemental memo. But our contention is that the Board has the power to file or to approve the filing of the petition. Under 4D, the delegation or the authority of the General Counsel is to litigate matters and complaints under 10 and to other duties as provided by the Board or given by the Board. Our contention is that there's a difference between the power to approve the filing of the petition versus the duty to file a petition before the Court. If the filing of- The word other is an odd word there in the statute, because it suggests that the things mentioned previously were in the same category as what's mentioned later. So, I mean, there's a drafting problem in there. Well, I think inherently in some of the statutes, I think the Board itself has, at least with the history, has struggled with it itself because I believe in 1947, as noted by the Board, the Regional Director was delegated the authority to approve the filing of the 10Js. And that changed with the 1955 memo, Board memo, that provided for restrictions within the General Counsel. But in terms of the filing of certain petitions for injunctions, the Board needed to approve it. And so what it did then was to limit the authority then to file the petitions and to approve the petitions to the Board itself as opposed to the Regional Director, which had been previously- Section 10E has exactly the same structure on 10F, right? In the context of the statutory language, yes, but not in the context in terms of how the charges are filed and the procedure with respect to the complaint. Let me explain, Your Honor. The 10J is an extraordinary relief that the Board can seek. Under the statute, a complaint is filed under 10B, 10J. The hearing adjudicated process within the Board occurs under 10C. That's not mentioned under 10B of 10J. 10E goes into the enforcement of- After the Board has decided. But what I'm pointing out is that if you are right about this power of duty thing, and I don't think it follows through if you follow the words through in the statute, but assuming you were right, you would have to come to the same conclusion about every decision to enforce every Board decision in every Court of Appeals in the country and every response to every petition for review filed by another party in every decision in the country. And that has never happened. Is that right? Yes, Your Honor. So you're basically saying that for 60 years they've been doing this wrong. Well, Your Honor, it's similar to, I think, the delegation of the Board with respect to the New Process Steel case decided by the U.S. Supreme Court with respect to the finding that a two-member Board did not constitute a quorum under the statute and then negated the 600 decisions that the Board issued. Yes, that was for 65 years. And one of the things the Court said in New Steel was that the practice over a time period was very important. I'm sorry, Your Honor. One of the things they said about why they thought this was wrong was because it had never happened and the history of it was important. Well, the history here with regard to 10e, at least, is that they've never done it that way. And unless you can give me some distinction between 10e and 10j as to the wording argument you're making, I don't see a distinction. The distinction I'm trying to make, Your Honor, is in the process in which 10e would come into play. What we have here is the filing of a complaint, the hearing of the complaint by an ALJ and the issuance of a decision. Thereafter, then, under 10e, the appeal process or the enforcement process occurs. Under 10j, we're looking at a complaint filed only under 10g. I understand all that, but your argument is really that that doesn't matter, that this prosecutorial adjudicatory distinction doesn't matter. And what does matter is the words power versus duty. And that language is exactly the same in 10j, 10e, and 10f, right? That's correct, Your Honor. So what's the difference? Well, Your Honor, I think if you look at the board memo in 1955 that the Court had made the parties address, while we would argue that the memo was without the authority of promulgated pursuant to the Administrative Procedures Act, nevertheless, if the Court finds that that is a valid regulation, which I believe it did in C.C. Plywood. Yes, we've already held that, I think, in another case. And therefore, then, in the board memo, it specified that there's the approval process for any type of injunctive relief. I understand that. What I'm trying to find out is I understand that the board started one way in 10e, and most of the time, although not all of the time, differently for 10j, but not all the time. What I want to know is if you were right about 10j, what language reason, I understand that they've done it differently and that the circumstances are not the same, but you're making a language argument, and the language is the same. So on what theory, on your argument, would there be a difference? Again, Your Honor, it goes back to the sequence in which the matter arises before the board, and having the full adjudication of a complaint under 10c versus the filing of a complaint only under 10j, or at least that's what the statutory provision provides for. It only identifies 10b within the 10j. And then, Your Honor, see, I'm running close to my time, but what I wanted to mention was I believe that the mention of 10b within 10j also goes into the delay argument that we raised before the court, in the sense that the complaint that was filed in September 2008, the 10j, was not filed until January 2010. While the board has argued that it was prudent on its part to wait for the adjudication, at least under 10j, the complaint need only be filed under 10b. It's extraordinary relief. Therefore, the expedited nature of the process would then be required. Here, though, the board chose to proceed under 10c with the holding of a hearing, holding of having a decision, and waiting until the parties accepted to that decision. Let me just ask you a question just for information. You and Judge Berzon at one point talked about new process deal and the importance of, I guess, history on how things have been done at the board under new process deal now. Before this quorum emergency arose at the board, what was the practice at the board on these 10j petitions? Did the board actually approve all of them individually? Yes. My understanding, Your Honor, is that it's not a rubber stamp type of arrangement where the general counsel would simply go to the board and say, this is what we want to do. So the history before the quorum emergency is that the board itself exercised that power? Yes, Your Honor. Since 1955, but not before? Correct. So it wasn't uniform. It was from 1955, but not before? With the board memo. It appeared that prior to that, they had delegated that authority to the regional director, and the 1955 memo then changed the board's practice to then have the board approve any injunctive relief under EF or 10j. Okay. We're down to just a little over three minutes. Do you want to save that time? Yes, please. Please go ahead. Please declare it. I'm Margaret Luke, counsel for the National Labor Relations Board. The board seeks affirmance of the district court's order. The district court acted within its discretion in granting this injunction. I'll turn first to the delegation question. Most of the courts in the question was, what is the legal basis for the assumption that the board needs, the general counsel needs specific authorization? Since 1955, the board has granted, on a case-by-case basis, the authority of the general counsel to seek 10j relief in federal district court. On several occasions, including most recently from the end of 2007 to the middle of 2010, the board granted the general counsel blanket authorization to go to federal district court on 10j petitions. The 10j statute vests the district courts with jurisdiction to hear 10j petitions. The one thing is that although the statute says the board shall have the power to petition, in fact the petition has never been filed in the name of the board as such. It's been filed by the regional director by and behalf of the board or something like that. Yes, that's correct. And the board has never actually governed, I mean, after deciding whether to do it, hasn't micromanaged. No, because the general counsel has the authority under 3D to be the board's prosecutor. The agency's prosecutor. So in consistent with the general counsel's duties to be the prosecutor, the general counsel brings the petition to district court and then the district court adjudicates the petition. So that preserves the structure of the act in dividing the adjudicatory powers to the board part of the agency and the prosecutorial part to the general counsel. I don't really, I mean, it's sort of a nice theory and it probably, it has to be true, although I don't know where you get it in the statute that the board can't delegate its adjudicatory powers. But where is this in the statute? In fact, the prosecutorial powers that the counsel has in the statute, that are given to him in the statute, all deal with prosecuting before the board. Yes, and then it also says. Prosecuting for the board. Prosecuting for the board is 10E, 10F, 10J, and it's all delegated authority. Yes, because it's under the language of 3D, such other duties that the board assigns to the general counsel, consistent with the prosecutorial authority. But where is this, where are you getting this prosecutorial thing, other than sort of basic good sense, but it's not really in the statute. Well, under section, under 3D of the act. I'm sorry, where in 3D of the act? Where it says forth the powers or the duties of the general counsel, and that the board will also have the authority to delegate such other duties to the general counsel. It doesn't say such other prosecutorial duties. It says such other duties. Since 1955, as a general rule, the board has delegated only on a case-by-case basis, the authorization to go to federal district court. But as we've mentioned, from 1947 to 55, the board chose to arrange its proceedings such that the regional directors themselves could go into district court. So what you're really saying, which is interesting and different from what I understood before, is that in any event there's a delegation. There's a delegation either generically or individually. But the 55 memo just said, well, we're going to delegate this on an individual basis rather than on a categorical basis. But once we've delegated it, we've delegated it. Once we've decided to do X case, that it's delegated to you and we're not there anymore. And until such time as the board decides to revoke that, as it has done in several occasions before the 2007 time when the board anticipated that it was going to slip below three members and it delegated that authority to the general counsel. Do you have some, it's a two-part question. Isn't the board opinion in this case likely to issue pretty soon? One would hope. And when it does, do we still decide this question or what? This delegation question. In other words, I wouldn't be at all surprised if the board decision in this case doesn't show up next week. Because it's a 10-J case, the board has to assign priority to 10-J cases. But we have no idea when, as a general counsel staff, we have no idea when that's going to issue. How long now, a year and a half or so? We don't know. How long has it been before the board? Oh, how long has it been before the board? Since, sorry, December 09. Right. So over a year. On the exceptions. Over a year. And the board knows it may have this problem again sometime soon. It may have the new steel problem. I assume they're trying to get through things rather quickly. I'd be really surprised if this doesn't show up pretty soon. If it does show up soon, do we still go ahead and decide the delegation question? Well, the 10-J expires by its terms when the board order issues. But until that board order issues, the 10-J remains live.  I guess what I'm asking you is, is this capable of repetition, yet evading review like the Miller case was, such that even if the board issue next week, we would decide it anyway? I don't have the answer to that. But I could submit a response to that. It would be an agency question. I'll have to wait until it happens and worry about it then. But I'm just anticipating that it's not an unlikely scenario. I can't anticipate it with any more accuracy than, Your Honor, when it will come out, when the board decision will come out. But in any event, under the 1955 memo, as you alluded to, the general counsel can seek enforcement of board orders and oppose petitions for review under Section 10 E and F without specific approval. But when the general counsel and the board wish to seek injunction relief under 10 E and F, then as a general rule, the general counsel needs the ---- Now, that memo was just a memo. It wasn't a regulation promulgated under Section 6 of the Act. And it was so that, what I'm slightly concerned about is the fact that this delegation didn't seem to take any account of that memo particularly. Well, the ---- It didn't suspend it exactly. That memo was never rescinded, right? It's revoked temporarily by the terms of the delegation. And then the delegation itself will, by its terms of that board minute, will terminate. You mean expressly? Yes. And then thereafter, so therefore, this delegation ended in April. And then in July, the board ratified, the five-member board, ratified the earlier decision to delegate at the end of 2007. Well, it wasn't expressly. The delegation memo, well, I'm not sure. I don't think it mentioned the 55 memo, but theoretically it wouldn't have to because the 55 memo doesn't have the status of regulation anyway. It's just an internal. It's an internal board managerial tool. Just as in 2001, the board also delegated its authority to authorize 10-J petitions on a blanket basis temporarily, while it anticipated that the board's numbers would sit below 3. Therefore, none of the courts who have looked at this have expressly found this to be a jurisdictional question. One court alluded to it being jurisdictional, but then most of them have looked at it as to whether the board had authority to delegate. The only reason that would matter is if there was an attempt at later ratification, and there really wasn't exactly here. My understanding is that there was, I had originally thought that what the board did later was say we now ratify all the decisions by the general counsel to seek 10-Js, but actually that's not what they did, right? Yes, they ratified the authorization done by the previous. Right, but they didn't ratify, but that only takes care of the new steel problem, but it doesn't, but they didn't ratify, they didn't purport to go back over the 10-J determinations that had been made in the meanwhile and ratify them. No, it was ratifying the delegation. I'm sorry, what? It was ratifying the delegation. I understand that, and another way to fix this up, you know, now would just be for them to now make some decisions about whether they would ratify the 10-Js. I don't know if that would fix it, but it might, but that isn't what they did. No, Your Honor, and they didn't need to issue that ratification, and by its terms as the board has done previously, the temporary delegation of authority has been upheld by various courts and recently was upheld by the Fifth Circuit in the El Paso case, and before new process steel came out, the Fourth Circuit also upheld the delegation. Turning to the question of delay or the passage of time, although there has been a lengthy period of time between the initial ULPs and the seeking of petitions for relief here, it was a complex and lengthy record. The employer violated the act in several ways over a long period of time. It took the regional director, staff, time to investigate these cases. The employer violated the act in several ways, including failing to bargain in good faith over two different periods of time, withdrawing recognition, discharging key union supporters, and refusing to recognize and bargain with union after it withdrew recognition. With all of these lengthy ULPs, the regional director was prudent in waiting for the ALJ to issue a decision in this case. It was a lengthy record, as we said. The regional director's decision finding all of the unparalleled practices that were alleged in the petition to exist, and that decision served as a useful benchmark in the district court in finding a likelihood of success on the merits. Essentially, it was a tradeoff between whether the irreparable harm would dissipate versus whether proving the likelihood of success by demonstrating it was a good thing or a bad thing, and whether they had actually made a decision. And I gather that the general counsel seems to be doing this more and more. When there's a lengthy record, when there's a period of time where there's many unfair labor practices over a period of time, rather than, say, just discharges that occur at one instance without all of the other unfair labor practices that have occurred, it's found to be prudent to wait for that ALJ to hear the evidence to make fact findings and credibility resolutions. Well, McDermott seemed to have some problem with this, but my understanding is that the district, is this a discretionary thing with the district court or what? Yes, it's within the discretion of the district court, and the district court here acted within its discretion in finding that despite the passage of time, that all of the four factors of supporting finding an injunction here overpowered any delay here. And in any event, the primary focus should be on whether the employees should suffer from the board's delay and whether the status quo. Well, the only relevance of the delay is whether there's no longer, it seems to me, is whether there's no longer irreparable harm because there's no way you're going to fix it anymore. So the real focus has to be on whether there is something that can be accomplished by the injunction, right? I mean, the harm may be irreparable, so irreparable, that there's no point having the injunction. Yes, Your Honor. The union is still interested here in representing and bargaining for the employees, the unit that they were certified to represent some time ago. The key union supporters who are on the bargaining committee are still interested in returning to work. Absent granting this relief, the employees will continue to lose the benefits of collective bargaining. It is more than likely that the key bargaining committee supporters will drift away, find other employment, and the employees who remain in the bargaining unit will see that there's no remedy for unfair labor practices that they will have because of the length of time for the administrative process to complete by the time the final board order issues. What has, in fact, happened on the ground? Have these people gone back to work and the employer has had the meeting where they've said whatever they were supposed to say and so on? Well, Your Honor, that's outside the record, but I understand the employees were reinstated, but one was discharged, and that I understand the contempt. And some form of bargaining has been going on in the meanwhile. I understand the contempt petition has been filed. I don't know that, again, those facts are outside the record, but that's what I understand from the regional office. Those cases, in the Ampersand v. McDermott case, or the McDermott v. Ampersand case, the court found no abuse of discretion when the district court refused to issue a petition. In that case, the district court was concerned with First Amendment entanglements and found little likelihood of success for any of the other factors supporting and granting a petition. In this case, the court found within its discretion that delay would not undermine issuing the petition, that the board had shown a strong likelihood of success on the merits that would be irreparable harm if the petition were not granted, that the balance of harms tipped towards granting a petition, and that the only harm to the employer is that it would have to bargain in good faith, as it would be required to under the administrative law judge's decision. And there would be harm to the public interest in that the board's processes would be impaired, that the board's remedial authority would be undermined, and that, again, the employees would lose the benefits of good faith bargaining and the collective bargaining process would be undermined. If the court has no further questions, I will submit the case on the briefs. Thank you. Your Honor, just briefly, in terms of the status, and I believe that the board is correct, it is out of the record, but just for the court's knowledge, the employees were reinstated, bargaining has occurred, the union was recognized by the employer. However, in terms of delay, Your Honor is correct, in terms of whether the likelihood of success versus the irreparable harm, our contention is that the lengthy delay here was by choice of the board in terms of not pursuing the 10J soon after the complaint had been filed. Well, that seems to be a policy that the general counsel came up with around 2002, from what I could tell. And it makes a lot of sense in some ways, because otherwise they essentially have to come into the district court with the entire record, not having filtered it through the ALJ in terms of likelihood of success. In many ways, you eliminate the likelihood of success problem by waiting until after the ALJ, which becomes more of a problem after winter and so on, by waiting for the ALJ to decide. Once you have an ALJ decision saying that the, in fact, the general counsel should prevail, you certainly have a pretty good argument that this really is a merits problem. And so then if, so unless there is nothing the injunction could accomplish, I don't understand what the delay, why the delay matters. Well, Your Honor, I go back to what the statute provides for with respect to the extraordinary relief under 10J. And that is, under the statute, the complaint need only be filed under 10B. The adjudicative process that goes into the likelihood of success, which Your Honor had just mentioned, goes into 10C, which goes into having the hearing, having the decision. The filing of the petition, at least under 10J, only refers to 10B. And that's where the extraordinary relief comes in. I didn't hear that. Only refers to 10B. And that's where the extraordinary relief comes in, wherein before the complaint had been issued, the board had done investigations with respect to the unfair labor practice charges. And therefore, they're well aware of what the case is about. It's not that the complaint is the first instance in which the case arises. And therefore, at least in terms of the choice to proceed under 10C versus going to 10B and merely filing the complaint and going to district court and asking the court, based on this, will it be proper to issue a 10J. And that's where it comes into the board approval, Your Honor, to determine whether or not under the circumstances that is an appropriate petition to be filed. I mean, I understand the court did this for years. But it strikes me as being a rather odd way to proceed. Because if the board then is reviewing the merits at the stage of deciding whether to ask for an injunction, but without an adversary process and without lawyers appearing before them and so on, just on the general counsel's say-so, essentially, and then later is going to decide the merits of the case as an adjudicator, that puts the board in a tough position, doesn't it? And that's where the expertise of the board with respect to the labor matters. And in some instances have rejected the general counsel's request to file a petition for 10J. But isn't this a cleaner approach, where it's the general counsel who's prosecuting the case before the board, who decides whether to ask for the injunction does not involve the board. So the board is not prejudging the merits of the case. And you have an adjudicator who is actually a clean adjudicator, which was the point of the 1947 amendments to begin with. But, Your Honor, real briefly, the process in which 10J contemplates is compiling a complaint under 10B, not going through the entire process, which, Your Honor, it's been argued that that makes sense in terms of having the adjudication. But a full hearing could also be held before the district court. In this particular case, it wasn't. But you would still have to have the 10C hearing. It's not an either-or. Correct, Your Honor. The 10C hearing will proceed. And so the board, having half decided the merits before there was even a record made, is now going to be in the position and has been. And I understand how it was done since 55. Is then going to decide the merits after the record is made as well. Well, that's what's been happening, Your Honor. And respondents disagree with that process based on the statutory language. Okay. Thank you very much. Thank you both sides for your nice arguments. The case of Morelli v. HDH Corporation is now submitted for decision.
judges: Tashima, Fletcher W. , Berzon